Good morning, everyone. This is case number 4-230269, People of the State of Illinois v. Maya Nodine. Good morning, counsel. Would counsel for the appellant introduce yourself, please? Good morning. My name is Manuela Hernandez from the Office of the State Appellate Defender for Ms. Maya Nodine. Thank you. And counsel for the appellee? Good morning. My name is Courtney O'Connor. Thank you very much. At this time, are counsel ready to proceed? Yes, Your Honor. All right. Ms. Hernandez, you may begin. Thank you. And may it please the court, counsel, again, my name is Manuela Hernandez from the Office of the State Appellate Defender, and I represent Ms. Maya Nodine in this case. Now, we can all agree that this is a very tragic case and that the death of the victim here was caused entirely by my client. But this is not a simple case. At the time of the incident, my client was suffering from serious clinical conditions, major depressive disorder, MDD, post-traumatic stress disorder, PTSD, with panic attacks. And at the time of the incident, she was actually experiencing a panic attack. Now, we maintain that this court should vacate her conviction for first-degree murder and reduce it to reckless homicide based on the evidence, the sufficiency of the evidence. However, for this argument, I'm going to focus on arguments two and three that relate to the trial procedure. The first one being the violation of Maya's Sixth Amendment right to counsel, and the second one dealing with trial court errors with respect to the evidence and with respect to instructions that rise to the level of reversible error. So, I'm going to start with her Sixth Amendment right to counsel and the conflict of interest that we alleged in the opening brief. Under People v. Yost, the Supreme Court has said that a per se conflict of interest exists when there is a contemporaneous association between counsel and the prosecution. And in this case, there was a contemporaneous association between counsel and the prosecution. Before Maya's second trial began, counsel told the court that her ability to represent Maya was compromised because she was facing a petition to revoke probation that was filed right after Maya's first trial ended. Counsel, if I may, just for clarity, when you state that she told the court, you're suggesting that that was contained within the motion for substitution that was heard by Judge Stroud, not Judge Feeney, correct? That is correct, Your Honor, but that was filed, I believe, with the court, which... In the court's record. Yeah, the court could have had access to that information. Is there anywhere in the record, though, and I appreciate it was filed, but when it was filed, the particular motion, amended motion that contained that language, at that time, the case had already been transferred for the purposes of the motion for substitution before Judge Stroud. Is there any... Stroud, is there any suggestion in the record that Judge Feeney actually read that motion, or is there anywhere in the record that clearly indicates Attorney Williams advised Judge Feeney of the fact a petition to revoke had been filed? In the record, there is no explicit indication that she told the court orally, or that Judge Feeney said, I read the motions. There is indication, however, that the court knew about these motions and was concerned about these motions, somewhat irritated by these motions. You know, we can speculate whether or not the court read them, but I would submit that in what's been filed. And there's a substitution of judge motion being filed. I would assume that the judge would have read what the motion had to say, especially because it was not a motion for substitution of judge as a right. And also... Excuse me, if I... Oh, well, go ahead. Finish that. Yeah, no, I was just going to say that in addition to that being on the motion, Judge Feeney was aware that counsel was on probation, that a motion to revoke probation was filed. Judge Feeney was the judge that was presiding over counsel's case. So in addition to that being put in the motion, where counsel explicitly says, look, I feel like I can't competently represent this client, the court also knew that there was this situation, this that could affect counsel's representation. And counsel, is there anywhere in the record where this conflict is discussed and the defendant waived the conflict? No, Your Honor. There is some note in counsel's amended motion where she says that she informed her client of the circumstances. However, it doesn't say that she agreed to be represented. Or that she actually understood what that meant. And the record is devoid of any judge addressing the conflict with the defendant, correct? That's correct. Thank you. So as this court requested the records that pertain to counsel's case, I would like to note that she was convicted of forgery of a felony. And that she was also convicted of lying. Well, this is what the forgery was, which was lying about community service. And Judge Feeney knew about this. And this goes to counsel's actual conflict of interest, where clearly here her relationship with the judge was strained. And her reputation with the judge was tarnished. And we can see this where when counsel moved to withdraw, she gave her explanation. Maya gave her explanation as to why she wanted new counsel. And the court basically said that it wasn't buying it. I'm not buying the story. I don't know what you're doing here. I don't know what you're trying to do. Showing that the court didn't really trust counsel, or what trust counsel was saying. And this affected counsel, because counsel understood that her representation and her advocacy didn't have the same weight as somebody else that the court hadn't essentially presided over a conviction for forgery. And one example of this is during sentencing, when defense counsel basically stated that anything she would say was not going to influence the court. I mean, this is, it's essential that counsel be able to address the court and feel that what they're saying has meaning and has influence. And this was lost. And it was lost precisely because of this conflict of interest where counsel had been convicted of forgery. She was on probation. And now she was essentially possibly resentenced to prison time. So both per se conflict of interest, where she had a contemporaneous relationship with the prosecutor who had some discretion in her case, he could have withdrawn the petition if he wanted to, he could ask for prison time, that constitutes a per se conflict of interest, and an actual conflict of interest where she stated herself that she felt her ability was compromised. The judge knew the judge never asked Maya, whether she understood the conflict, whether she was going to waive the conflict, none of that happened. And so because of this, this error constitutes reversible error. Now, if I may ask one question with regards to the argument related to an actual conflict of interest versus per se, what's the best evidence in the record that would establish that prejudice prong or element, if you would? Ah, yes. Well, first, I want to clarify that when there is an actual or a possible actual conflict of interest, the first step is to decide whether the court knew about the conflict. And if the court knew, whether the court inquired. So moving on to the next step, which is say the court didn't know, in this case, the court knew, but let's say the court didn't know. What prejudice is there? And, you know, it is always difficult to find prejudice because an attorney is always acting through strategically in a case. However, here, we can see with what I stated before, her sort of reaction to the court saying that she didn't believe that the court, that she could influence the court. The second error would be when the court um decided not to give the IPI instruction for recklessness that counsel had provided to the court. Counsel stayed quiet, didn't object to the court's instruction that that came from a case rather from the IPI. And also another example, although not specifically during the trial, but that could have had an impact on the trial itself, was when after their motion to this is special Maureen Williams' treatment. Suggesting that she would, the court was not being fair, was not being fair to counsel and was not being fair to Maya. And those are the examples that I have at this point of the prejudice. Now related to that is the court's of Maya's decision to get new counsel in this case. And it's connected, it's related because the court knew at that point that there was a conflict of interest. And Maya and counsel gave their explanations and the court didn't inquire any further. The court didn't say, well why do you need a continuance? Why are you, um, this case is on for trial, the case was not on for trial. And Maya said that she wanted to be represented by the public defender that would have been available to take the case. And these were not, the delay was not the reason why the court decided not to allow Maya to be represented by the public defender. The reason, I mean I obviously I can't read minds, I don't know exactly what the reason was, but clearly the court was concerned with the fact that that counsel had tried to substitute him for another judge. The court didn't believe anything that counsel was saying, didn't trust her, and completely dismissed Maya's reasons which were that she was afraid based on what was being told, I believe it was through social media, that if she had had somebody else represent her, she would have had a much better outcome. And that she was kind of doomed by being represented by this attorney. Obviously, you know, being a criminal defendant and feeling that your attorney is going to ruin your case should be a good enough reason for her to get the public defender that was readily available. So, because of the conflict of interest, and because the court denied her ability to get new counsel, the court violated her Sixth Amendment right, and this court should reverse her conviction and remand for a new trial. Now, unless there's questions about that. Well counsel, one of the questions I do have, and you've mentioned the judge knowing that she was on the trial, the trial judge knew that a petition to revoke had been filed. What is, what evidence is in the record to establish on what date that occurred? So, the state's petition to revoke was filed February 15th. So, we know that it wasn't noticed up until a later date, correct? I believe it was noticed up on that date on February 15th. Yeah, I believe if you look, the document right after the petition to revoke February 15th is notice. For March 17th. For March 17th. Oh, right, that would be the hearing date, counsel. Right. Yes. So, is there anywhere, and my question relates to, is there anywhere in the record to suggest the judge was aware of it before what would typically be the first appearance on that notice date? Other than what you've indicated in the motion for substitution of judge. Well, it would be for the motion of substitution of judge. That is the only real indication. Thank you. And actually, I mean, I really don't know how the court looks at these documents and at what point in time do they review what's coming up, what's being filed, and all of that. So, I mean, there is a possibility, I think a likelihood that the court knew that this had been filed. So, and she filed her amended motion for substitution of judge, which had the language about her conflict on February 21st. And then at the motion to withdraw the court also, as your honor knows, I already said this, but you know, the court talked about the motions for substitution of judge. So, go ahead. If there aren't any other questions about this issue, I would like to move on to the second issue, which is actually issue three in the opening brief. And this is regarding the trial court's errors during the trial with respect to evidence and instructions. So, the first one would be that the court barred Dr. Finkenbein's testimony, which was relevant. And, you know, the court erred in barring it for the wrong reason. That the court refused to give the IPI instruction with respect to recklessness, and that the court erroneously answered the jury's questions. Now, each of these errors on their own amount to reversible error, but obviously the cumulative effect of these errors also require, or this court should reverse on that basis. So, beginning with Dr. Finkenbein's testimony, his testimony would have explained how Maya's MDD, PTSD, and panic attack, which were combined happening at the same time, affected her ability to make rational decisions in that moment. The court focused on the fact that this sounded like diminished capacity defense, which is a defense that is no longer recognized under Illinois law. But this was error because trial counsel presented the case of People v. Valdez, which held that the admissibility of expert testimony regarding mens rea should be determined not by whether it falls within one of these defenses, but whether or not the rules of evidence allow it to come in. Basically, is irrelevant testimony and does prejudice outweigh the probative value. Valdez was cited approvingly by the Illinois Supreme Court in People v. Grayer, and that's the case that I submitted as additional authority, which dealt with a similar issue of voluntary intoxication. And again, the Illinois Supreme Court said, you know, it doesn't matter that voluntary intoxication is no longer a defense in Illinois. The proper analysis here is whether or not the rules of evidence allow this testimony to come in. And I submit that in this case, the testimony of Dr. Finkenbein was relevant. She suffered from serious clinical conditions, and his testimony required scientific knowledge. And I say this, I understand that most of us perhaps understand what depression is or may be. However, we do not understand what major depressive disorder is, which has, Dr. Finkenbein put in his report, several symptoms that, well, I didn't know, but, you know, the regular person doesn't necessarily exist, post-traumatic stress disorder, and the combination of those two, and panic attacks, and how those three interact with each other. And also about wanting to commit suicide. I see that I have two minutes remaining. Right. But counsel, isn't all of that, doesn't all of that go to diminished capacity again, just as the trial judge indicated? Well, although it is, it can be, or could be consistent with what diminished capacity used to be as a defense, I think the point in Greer is that we should not concern ourselves with whether or not this would fall within that definition of diminished capacity that we no longer recognize in Illinois. I think that Greer wants us to focus on, is this information relevant to challenge the person's mens rea, or what the state is saying the mens rea was, and using the rules of evidence to make that determination. It wouldn't be presented as a defense to the crime. It would be presented as a challenge to the mens rea. And I don't have a lot of time, but I do want to address briefly the IPI instruction error, where the trial court decided to give its own instruction that did not mention mental state at all, rather than giving the IPI instruction, which accurately states the law. And under Rule 451A, the court must give the IPI instruction unless the instruction does not accurately state the law. The court used the case of People versus Eubanks, but I would like to note that in that case, the court actually ended up having to give the IPI instruction for recklessness. And it's also important to note that in Eubanks, the defendant testified that he was not even driving the car. Eubanks dealt with the idea of how do you prove mens rea? And usually it's done by circumstantial evidence where the level of risk is a factor in making that determination. However, in this case, Maya testified directly about her mens rea. And if I may finish my thought here. So the IPI instruction was perfectly capable of explaining this. There was no need for, there was direct evidence of her mental state. Thank you, counsel. You'll have time on rebuttal. Thank you. Ms. O'Connor. Good morning. May it please the court and counsel. As counsel addressed, we're here today to address a very tragic and serious matter. That is on December 16th of 2021, Joy Hutton's life was tragically taken at the hands of defendants. And as counsel indicated, the defendant admitted to driving the vehicle, seeing the headlights coming towards her and accelerating and swerving into that vehicle, causing the death of Joy Hutton. I will follow counsel's footsteps and go ahead and just move to argument two regarding the conflict of interest. And as a per se conflict of interest. Good morning. With respect to the per se conflict and that issue, you are urging the court to not follow Yost but follow an older case, Johnson. And why should this court not follow the most current case with respect to what constitutes a per se conflict? It's a very good question. I think in my brief, what I was attempting to say was that as it happened in Johnson, there was no indication of why this conflict would affect the council's representation. But we don't need to know that for a per se conflict, do we? Certainly not under Yost, it's the relationship, the contemporaneous relationship that establishes a per se conflict. And we have that here, don't we? There technically was a relationship with the prosecution, but it was following her already being prosecuted for a crime and pending a petition to revoke hearing that the judge is unaware. I'm sorry, say that again. But as it was, sorry, excuse me, I was following, it was following her prosecution of the crime already committed. At that point, there's only a PTR filed, and the hearing on the PTR had not even happened until after the jury trial. So you're saying, I'm not sure exactly what your point is there. The court, what the state is saying is that, sorry, excuse me, remind us real quick. Here it is. The court is saying that there was no, I would argue that there was no evidence on the record of that relationship currently happening until the court was made aware of it at the hearing. She was following her prosecution already being committed, like prosecute of the crime. Okay, but when did the sentencing hearing take place? It was after that. It was after the PTR, but it was also, it was after the, sorry, it was after the jury trial, but prior to the sentencing. And there was arguably talks about, because you're asking about the fear of retaliation case as well as Johnson, your honor. So was there any evidence in mitigation that was presented by attorney Williams at that hearing regarding the defendant? Yes. Yes. There was, are you asking for the last argument? No, I'm asking with respect to the issue of conflict. If we look at the, and perhaps even whether we can look at even if we put per se aside for a minute and we look at even an actual conflict possibility, was there, and we look at the performance of attorney Williams, did attorney Williams introduce any evidence in mitigation at the defendant's sentencing hearing after the trial? I believe she did. Sorry, your honor, if you'll excuse me. No evidence that defendant attempts to argue that should have been admitted was already admitted on the record to the court. And a defense attorney cannot be faulted for evidence that's already before the court regarding mitigating evidence. Well, respectfully, my reading of the record was that there wasn't, but, all right, well, go ahead with the other. Let me go back to the conflict of interest issue at hand, please. So, as far as an actual conflict of interest, and as the honors noted, there was nothing ever in the record that the trial judge was aware the PTR was filed. The record is absent of it until obviously when the hearing occurred following the jury trial. And there was also nothing in the record indicating about how this criminal proceeding of defense counsel would affect representation of the defendant. Counsel, if I may, the state would have been aware that they filed the petition to revoke, correct? Yes. And the state would have been aware that in her motion for substitution of judge that was filed that she was claiming and raising this conflict, correct? Yes, I would agree with that. She also says in that motion for substitute judge that Bleacher says that her ability may be compromised instead of it will be compromised and doesn't really give, again, any information as to how her criminal proceedings could compromise her representation of the defendant. All she says is it may be compromised. But you agree the petition to revoke had the potential if it was proven where she would have been resentenced then on a felony that would arguably had a prison sentence available as a possible disposition. Correct. Is there anywhere in the record that suggests the judge addressed this matter with this conflict with the defendant? Not specifically, no. The only somewhat indication was with the motion to withdraw and assign the public defender. But there's nothing specifically regarding defense counsel's prosecution or the PTR. And is there anywhere in the record where the defendant waived the conflict? No, there's not. And wasn't it the same assistant state's attorney that was prosecuting the defendant in this case as was as was prosecuting the petition to vacate probation? Correct. Okay, so isn't it logical that attorney Williams would certainly not want to do anything to aggravate and instead want to stay on the good side of the assistant state's attorney as well as the judge who would be hearing her personal matter? Could say that is logical. But as defense counsel already argued, it seemed like sorry, as appellant already argued, it seemed like defense counsel already had an intuition that the court already had their mind made up about her and her representation and who she was as a person. So arguably, no matter what she did with her of defendant and what I've given her when it affected her PTR, arguably. So as an officer of the court, did the state's attorney's office have an obligation to advise the court, Judge Feeney of the potential issues that could develop or presented with the filing of the petition to vacate probation against attorney Williams? I think attorney Williams has had an obligation to inform the court of that. And the state's attorney's office did not? I would say they had an obligation if they wanted to completely avoid this issue on appeal, then it could have been addressed, but it was not addressed by attorney Williams. On record with the court, there's no evidence of it. And how could the court not have known about this potential conflict, given the filings that had before it and given the hearings in this case that took place? Albeit, I believe one of them, the petition to vacate before the sentencing hearing took place. I was like, you're looking at last part of that before before this sentencing hearing took place for the defendant. Did the petition to vacate probation hearing take place before that? Correct. Yes. At that point, how could the court not have known about this conflict? I was saying at that point, after the jury trial prior to the sentencing hearing, that was when the court, obviously, because they were the judge on the PTR hearing. At that point, he was aware of the PTR and the potential conflict. And so did he not have the obligation to admonish the defendant of this conflict and see if she wanted to waive it? He argued that he did. Pardon? You could argue that he did, yes. But again, attorney Williams also did not bring this to the court's attention as well. Well, that doesn't necessarily the obligation and we're looking at whether the court erred here. Are we not? Correct. But from what I've understood, we're addressing, excuse me, prior to the second hearing because of the motion to withdraw. So my understanding is that the conflict of interest didn't even happen until it was not brought to the court's attention until after the jury trial. But there's nothing in the record, excuse me, after the jury trial before the sentencing. So it should have been brought up, it should have been brought up at the sentencing hearing on the record. But counsel, wouldn't the conflict itself, and I'll set aside from whether there's a conflict or at the time that she's on probation and pursuing this, but at the moment the petition to revoke is filed, isn't that when the conflict arises? Yes, but the court was not aware of it at that time based on what we have on the record. And at the time of the motion to withdraw hearing before Judge Feeney, there is a reference where he says the filing, in essence, of these motions for substitution are serious. So can that not imply that he's reviewed them? It could, Your Honor, but again, it's based on what we have on the record. There's no specific conversation between defense counsel and Judge Feeney on record regarding this PTR. And that would have been before the jury trial even commenced, correct? If I may continue. Go ahead. Thank you. So we'll draw that the state is going to stay with arguments and rely on its brief that there was no conflict of interest here and therefore defendant did not need to waive nor did waive a conflict of interest. Moving on to the trial court's denial of the motion to withdraw. The reason motion to withdraw and assign the public defender, the reason given for the motion to withdraw was for a breakdown in communication. And when asked about that, essentially, defendants stated that she could not get a hold of defense counsel. But then she backtracked and said, well, I read something on the Internet that said if I would have had a public defender instead of this defense counsel, I would have walked. And arguably, that's not a breakdown in communication. That's more of the defendants feelings towards the public persona and how they believe this case should have happened or should have played out. We agree with the trial judges was not enough for the motion to withdraw to be granted, especially considering this is a case that had already been going on for two years. The state would argue that there was no conflict of interest and the trial court was proper and denying the motion to withdraw and ask this court to affirm her convictions. Would you address the counsel's argument with respect to the jury instruction, please? The jury instruction, yes. So as to the jury instruction that was given, the court did base it on the case. And the reasoning was because in that case, they found that there's no evidence in the record that required the recklessness instruction to be addressed in court. Addressed to the jury, my apologies. We would agree with that here that the court did not need to provide that specific instruction based on what was presented before the jury. Excuse me. And how do you respond to opposing counsel's argument that Dr. Finkbein should have, his testimony should have been allowed in this case? The state would say that, say when it's brief on that, that we still argue that the defendant is attempting to bring a diminished capacity defense here. And piggybacking off of that, we would also say that the term depression and its common knowledge in the jury here had the capacity to, sorry, excuse me. The jury here had the capacity to determine what the defendant's state of mind was at the time of the incident. And the expert testimony was not needed for them to understand what the common knowledge terms were for depression. And it was the jury's duty to weigh that evidence, the credibility of the witnesses, and make the reasonable inferences of what they would have believed she knew at the time of the incident. And again, we will just argue that the defendant here is still attempting to bring a diminished capacity defense that's not allowed in Illinois. Well, how is PTSD part of a diminished capacity defense? So we were talking here about not only depression, but PTSD. And that isn't common knowledge, is it? I mean, maybe we within the court system have heard that and have heard the term trauma and are addressing that. But what about everyday jurors? About they would know what PTSD would mean? Correct. I would personally argue that would still be a term that they would understand enough to make their determination about her state of mind at the time of the incident. I would argue that you wouldn't need that expert testimony that is essentially trying to say because of her mental illnesses, she could not have the requisite intent to commit this crime at the time. She did not understand what she was doing. I would argue that they could still take common knowledge of what PTSD is, as well as depression, and be able to make that determination of what her state of mind was at the time of the events. Thank you. Thank you. If there's no, is there any further questions? Justice Vansel or Justice Leonard, any further questions? No, I think not. Okay. Then the state would stand on this brief and rest of us. Thank you. Thank you very much. Ms. Hernandez, your rebuttal. Thank you. The first thing that I would like to point out is something that you just discussed here, which is the fact that after the court had already had a hearing with respect to counsel's petition to revoke probation, the court never addressed this conflict of interest during sentencing. Certainly, there could be a conflict of interest that arises after sentencing, and the court never said anything about this at all during sentencing. I think that when this court looks at, is there something in the record before that, before the hearing had occurred, where certainly the court was made aware of what was happening with the petition to revoke, the fact that there is nothing in the record where the court addresses it or acknowledges it is not necessarily evidence that the court didn't know. Because even when the court did know, the court failed to address it. But now I want to move on to the issue with instructions, because if this court decides to remand this case for a new trial, I think it's important that there be some understanding  Now, counsel says that in Eubanks, the court determined that there was not enough evidence for an instruction, and that was the trial court. But on appeal, the court determined that, in fact, there was evidence, because all that needs to be shown for an instruction on reckless homicide is some evidence. And in finding that, the court said that the trial court needed to give the IPI instruction on reckless homicide and recklessness. Now, the state says that, well, there was no evidence in this case. And so, you know, it doesn't matter because that the instruction was wrong, because the instruction shouldn't have been given in the first place. However, the court did give the instruction. The court did find that reckless homicide was an appropriate lesser included offense to be presented. So there was an obligation for the court to give the appropriate instruction with respect to that lesser included offense, rather than attempt to steer the jury to ignore the possibility that this could be a crime that she could be convicted of, rather than first degree murder. The jury was curious about this, about what was going on in Maya's mind when this happened. And whether or not that meant that she knew in that moment, the consequences of her actions or not. And the jury wanted to know, what's the difference between what you know and what you think? Because Maya's testimony was all about what she was thinking. She acknowledged that she knew in a moment where she's not suffering from a panic attack, that crashing into another car could cause the occupant's death. But what she says is that in that moment, she wasn't thinking about that. She said, if she had thought about that, she wouldn't have done it. And by the court, and this goes to the answer that the court gave to the jury's question, what the court did was essentially to say, disregard her testimony. And this was in line with using an instruction that didn't include the state of mind in the instruction itself. So unless there are any other questions, I'm going to ask first that this court vacate her conviction and reduce her charge to a reckless homicide. In the alternative, I'm going to ask that this court reverse the conviction and remand for a new trial, or that this court consider reducing her sentence to the minimum of 20 years or remanding the case for new sentencing so that all the mitigation evidence can be presented, including evidence that deals with her age at the time of the offense and everything that is connected to that. Thank you, counsel. Justice Lannard, do you have any further questions? I do not. Thank you. Justice Vancell? I do not. All right. Thank you. Thank you very much, counsel, both of you, for your arguments in this case. The court will take the matter under advisement and render a decision in due course.